Dear Mr. Henson:
You requested the opinion of this office regarding Act 897 of the 2001 Regular Session of the Louisiana Legislature ("Act 897"). As you advised, Act 897 granted an increase in the accrual rate with which benefits are calculated for members of the Louisiana School Employees' Retirement System ("LSERS"). The Act was retroactive in effect and contains a provision which increased the employees' portion of the contributions which fund the retirement system. Section 2 of Act 897 provides as follows:
 Notwithstanding any other provision of law to the contrary, the actuarial cost of implementing this Act shall be paid from surplus funds available to the system, but shall not be paid in whole or in part from funds contained in the Employer Credit Account.
You advised that for the plan year ending June 30, 2000, LSERS had a surplus in the amount of $264,447,383. During the plan year ending June 30, 2001, deductions were made from the surplus in the amount of $240,466,597. The actuarial cost of the benefit increase that was contained in Act 897 was $102,566,157 which was also deducted from LSERS surplus funds. A $19,833,554 addition from interest earnings was made to the surplus. For the plan year ending June 30, 2001, the surplus was $43,814,340.
The Employer Credit Account had a balance of $56.6 million on June 30, 2001.
You further advised that at the December 17, 2001 meeting of the Public Retirement Systems' Actuarial Committee (the "PRSAC"), there was discussion regarding the decrease in LSERS' surplus and the effect on the employer contribution rate for LSERS. A decrease in the retirement system's surplus results in an increase in the amount of the employer contribution rate, as the surplus in funding has a positive effect on the actuarial funding of the system. The discussion at the PRSAC meeting involved whether the effect of the deduction of the cost of the benefit increase from the surplus was to be treated as a cost of the benefit which would be prohibited from being paid from the Employer Credit Account, or whether the deduction should be treated as all other deductions from the surplus, thus allowing this portion of the increase in the employer contribution rate to be deducted from the Employer Credit Account.
You also advised that the Employer Credit Account was created as the result of previous excess contributions on behalf of the employers. The employers in actuality are the various school boards throughout the state, although funding had been made by the State through the Minimum Foundation Program ("MFP"). After the creation of this account, MFP funding was reduced. Employer contributions are deducted from this account based upon the rate set by the PRSAC. The effect of not allowing the total deduction of the employer contribution rate from this account would be to impose a contribution rate on the local school boards in addition to the amount deducted from the Employer Credit Account.
The question presented is whether the increase in the employer contribution rate attributable to the decrease in the LSERS surplus as the result of the benefit increase authorized by Act 897 may be paid from the Employer Credit Account.
Your question must be answered in light of the Civil Code provisions regarding the interpretation of laws. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. C.C. art. 9. When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law. C.C. art. 10. The words of a law must be given their generally prevailing meaning. Words of art and technical terms must be given their technical meaning when the law involves a technical matter. C.C. art. 11. When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole. C.C. art. 12.
As quoted above, Section 2 of Act 897 requires the actuarial cost of implementing Act 897 to be paid from the system's surplus funds and not from the Employer Credit Account. Based upon the information provided, namely that the actuarial cost of the benefit increase that was contained in Act 897 was $102,566,157 and that such amount was paid from the surplus, it appears that the actuarial cost of implementing Act 897 was indeed paid from surplus funds and not from the Employer Credit Account. We would suggest that the legislation does not require that the cost of deductions which occur after implementation of Act 897 be payable only from the surplus. Accordingly, the increase in the employer contribution rate attributable to the decrease in the LSERS surplus as a result of the benefit increase authorized by Act 897, which occurred after the implementation of Act 897, may be paid from the Employer Credit Account, provided such deductions are in accordance with the statutory conditions on the use of Employer Credit Accounts. See R.S. 11:102.
Trusting this adequately responds to your request, we remain
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: ____________________________ MARTHA S. HESS Assistant Attorney General
RPI:MSH:jv
DATE RELEASED: May 28, 2002